**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>JUSTIN BRIAN GOMEZ,<br><br>Debtor. | Bankruptcy Case No. 26-10040 TBM<br>Chapter 7 |

# ORDER DENYING MOTION FOR AWARD OF ATTORNEY'S FEES

This matter comes before the Court on "First Service Credit Union's Motion for Award of Attorney's Fees and Expenses" (Docket No. 118, the "Fees Motion") filed by First Service Credit Union ("FSCU") and the Debtor's Response in Opposition to First Service Credit Union's Motion for Award of Attorney's Fees and Expenses" (Docket No. 125, the "Response to Fees Motion") filed by Justin Brian Gomez (the "Debtor").

## I. Procedural Background.

On January 5, 2026, the Debtor initiated this Bankruptcy Case by filing a Petition for Relief under Chapter 7 of the Bankruptcy Code. (Docket No. 1.) The Bankruptcy Case proceeded uneventfully. The Debtor filed a "Statement of Intention for Individuals Filing Under Chapter 7" stating that he wished to surrender a 2022 GMC Sierra 2500 Truck (the "Truck") to FSCU. (Docket No. 10.) On April 13, 2026, the Court entered a standard "Order of Discharge." (Docket No. 24, the "Discharge Order.") Per the Debtor, FSCU repossessed the Truck on April 20, 2026.

Shortly thereafter, the Debtor filed a "Motion for Contempt and Sanctions for Violation of Discharge Injunction Pursuant to 11 U.S.C. §§ 105(a) and 524(a)(2)" against FSCU. (Docket No. 29, the "Contempt Motion.") In the Contempt Motion, the Debtor alleged that FSCU sent a "Notice of Our Plan to Sale Property" ("Notice") to the Debtor on April 22, 2026. The Debtor also asserted that he called FSCU on April 29, 2026. During his conversation with FSCU, the Debtor did not state that he had filed for bankruptcy or obtained the Discharge Order. About ten minutes after the call, FSCU called the Debtor back and explained that the Notice was sent in error.

According to the Debtor, FSCU's sending of the Notice and its conversation with FSCU (which the Debtor initiated), constituted violations of the Discharge Order. He requested that the Court "consider equitable relief in the form of coercive sanctions to compensate for harms resulting from FSCU's post-discharge conduct." He did not seek an award of damages in the Contempt Motion. FSCU filed a "Response" in opposition to the Contempt Motion. (Docket No. 31, the "Contempt Response.")

The Court conducted a preliminary hearing on the Contempt Motion and Contempt Response (together, the "Contested Matter") on June 18, 2026. (Docket No. 40.) After hearing from the parties, who disagreed about the facts underpinning the dispute and who agreed that an evidentiary hearing would be needed to resolve factual disputes, the Court determined that the dispute over the Contempt Motion was a "contested matter" within the meaning of Fed. R. Bankr. P. 9014 and scheduled a trial on the matter for September 14, 2026. However, the Court noted that it was difficult to see how the Debtor could have suffered any damages as a result of the alleged violations of the Discharge Order. The Court also set various pre-trial deadlines, including deadlines for discovery, exchange of exhibits, filing of witness and exhibit lists, and submission of legal briefs. (*Id.*) Further, the Court "encourag[ed] the parties to try to resolve the matter because it does not appear to be economical to proceed to trial." (*Id.*)

A couple of weeks after the preliminary hearing, the Debtor determined that he needed more time to conduct additional discovery into various matters and prepare for trial. He filed a "Motion to Modify Discovery, Pretrial, and Evidentiary Deadlines." (Docket No. 46, the "Motion to Modify.") Two weeks later, and without awaiting an order on the Motion to Modify, the Debtor followed up by filing an "Emergency Motion for Limited Stay of Discovery and Related Pretrial Deadlines in First Service Credit Union Matter" (Docket No. 54, the "Stay Motion"). In the Motion to Modify and the Stay Motion, the Debtor proposed to stay certain deadlines, continue the trial, and modify the related pretrial deadlines so that he could engage in a multi-stage discovery process. (*See* Docket Nos. 46 and 54.)

On June 18, 2026, the Court issued an "Order Denying Motions (Docket Nos. 46 and 54)." (Docket No. 59, the "Order Denying Motions.")[1] Therein, the Court found as follows:

> In addition to lacking proper legal and factual bases, the Motion to Modify and Stay Motion simply do not show why the Court should depart from the schedule (including pretrial deadlines and trial) already set for adjudication of the Contempt Motion and Response. The Contempt Motion alleges only two seemingly minor and technical possible violations of the Discharge Order which can be adjudicated promptly. Additional extended discovery periods and scheduling changes are not warranted.

The Court, therefore, denied the Motion to Modify and the Stay Motion. Notwithstanding, the Court again "encourage[d] [the Debtor] and FSCU to resolve what appear to be relatively minor alleged violations of the discharge injunction consensually."

---

[1] The procedural history related to the Debtor's efforts to modify the trial schedule is set forth in greater detail in the Court's Order Denying Motions (Docket Nos. 46 and 54) and is incorporated herein by reference.

Not long thereafter, discovery disputes between the parties ensued. As a result of such disputes, FSCU filed "First Service Credit Union's Motion for Protective Order Limiting Discovery" (Docket No. 62, the "Motion for Protective Order") and the Debtor sent an email to the Court pursuant to L.B.R. 7026-1(d)(2) requesting that the Court resolve the disputes. (*See* Docket No. 66.)

At a hearing held August 17, 2026, the Court expressed puzzlement at the Debtor's continued prosecution of the Contested Matter in light of the minimal damages that could have arisen from the very minor possible violation of the discharge injunction revealed by the filings in the Contested Matter. After hearing the parties' presentations regarding the discovery disputes, the Court issued an oral ruling, partially granting and partially denying the relief requested by the Debtor under Fed. R. Bankr. P. 7026, and partially granting and partially denying the Motion for Protective Order. The Court did not grant any request for fees or costs for either side; however, the Court slightly modified the scheduling order governing pre-trial matters in connection with the Contested Matter. (Docket No. 69.)

On September 14, 2026, the Court held a trial on the Contested Matter. At the trial, both the Debtor and FSCU offered opening statements, presented witness testimony and documentary evidence, and made legal arguments. After the close of evidence and after hearing the parties' arguments, the Court issued an oral ruling pursuant to Fed. R. Civ. P. 52 (made applicable to the Contested Matter by Fed. R. Bankr. P. 7052), denying the Contempt Motion in its entirety. (Docket No. 110.) The Debtor has since appealed the Court's ruling to the Bankruptcy Appellate Panel for the Tenth Circuit. (Docket No. 128.)

## II. **The Fees Motion and Response to Fees Motion.**

FSCU filed the Fees Motion on September 24, 2026. In the Fees Motion, FSCU seeks an award of attorney's fees[2] pursuant to Section 105(d) of the Bankruptcy Code[3] and Fed. R. Bankr. P. 7054. Among other things, FSCU discusses its efforts to settle the dispute with the Debtor, and argues that the Debtor's action in continuing the prosecution of the Contempt Motion after August 17, 2026, "despite multiple and ongoing attempts [by FSCU] to settle the matter with the Debtor . . . needlessly increased the costs of litigation" and unreasonably and vexatiously multiplied the proceedings before this Court. (Docket No. 118 at 1-2, 5-6.) Specifically, FSCU requests that the Court find that the "Debtor's continued prosecution and expansion of the Contempt Motion, particularly after the Court's August 17, 2026 observations

[2] Though the title of the Motion suggests that FSCU is seeking an award of expenses as well as an award of attorney's fees, FSCU has not actually filed a bill of costs pursuant to Fed. R. Bankr. P. 7054(b)(1), nor has it identified any specific costs that it seeks to recover in the Motion. Accordingly, the Court construes the Motion as seeking only an award of attorney's fees.

[3] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

concerning the limited nature and minimal damages associated with the asserted violation, constitutes conduct warranting relief under [Section 105(a)] and this Court's inherent authority." (Docket No. 118 at 7.) FSCU further requests that the Court award it $5,782.50, the amount it contends are its "reasonable attorney's fees and expenses causally attributable" to the Debtor's alleged misconduct. (*Id.*)

The Debtor opposes the Fees Motion. Though he acknowledges that FSCU prevailed in the Contested Matter, he asserts that FSCU has not demonstrated that it is entitled to shift its litigation costs to him. The Debtor notes that the Court did not make any findings in its oral ruling that support an award of fees and disputes that his conduct after August 17, 2026, was in any way sanctionable. The Debtor also disputes FSCU's account of the parties' settlement discussions, among other things.

## III. <u>Applicable Legal Authority</u>.

FSCU seeks an award of fees pursuant to Section 105(a), Fed. R. Civ. P. 54(d)(2), and this Court's inherent authority.

### A. <u>Section 105(a)</u>.

Section 105(a) authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and to make any determination "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). The Tenth Circuit has recognized that Section 105(a) is "intended to empower bankruptcy courts with the inherent powers imbued in the federal district court to sanction conduct abusive of judicial process." *McGann v. Jagow (In re McGann)*, 2025 WL 249990, at *4 (10th Cir. BAP Jan. 21, 2025) (citing *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994); *In re Skinner*, 917 F.2d 44, 447 (10th Cir. 1990)). *See also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-376 (2007) (recognizing that even if Section 105(a) had not been enacted, courts have inherent power to sanction abusive litigation practices); *Providian Nat'l Bank v. Manion (In re Vitt)*, 250 B.R. 711, 723 (Bankr. D. Colo. 2000) (citing *Courtesy Inns* and *Skinner* for proposition that Section 105(a) is intended to empower bankruptcy courts with inherent powers to sanction conduct abusive of judicial process). However, Section 105 is not some grand repository of equitable power that the Court may use as it sees fit.

In *Law v. Siegel*, the Supreme Court held that a court may not carry out the provisions of the Bankruptcy Code "by taking action that the Code prohibits." 571 U.S. 415, 421 (2014). That is to say, Section 105(a) "'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Id.* (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], p. 105-6 (Lexis Nexis 16th ed. 2013)) The same holds true for actions the Rules prohibit. *See In re Scrivner*, 535 F.3d 1258 (10th Cir. 2008) ("Section 105(a) does not empower courts to create remedies and rights in derogation of the Bankruptcy Code and Rules."). *See also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (quoting *In re Barbieri*, 199 F.3d 616, 620-21 (2d

Cir.1999), for proposition that "equitable powers emanating from § 105(a) are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules"); *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987) (stating that equitable powers emanating from Section 105 "are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules"); *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986) (explaining that Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity"). So, to the extent that the Court has authority under Section 105(a) to award fees as a sanction, it must do so within the confines of the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure which govern such awards.

**B. Fed. R. Civ. P. 7054.**

Fed. R. Civ. P. 7054 is made applicable to this Contested Matter by Fed. R. Civ. P. 9014(c)(1). Rule 7054 provides that certain provisions of Fed. R. Civ. P. 54 are applicable in bankruptcy proceedings, "including Fed. R. Civ. P. 54(d)(2)(A)-(C) and (E)." Fed. R. Civ. P. 7054(d)(2)(A). Thus, this Contested Matter is governed by the following portions of Fed. R. Civ. P. 54(d):

> (2) **Attorney's Fees.**
>
> (A) **Claim to Be by Motion.** A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>
> (B) **Timing and Contents of the Motion.** Unless a statute or a court order provides otherwise, the motion must:
>
> (i) be filed no later than 14 days after the entry of judgment;
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> (iii) state the amount sought or provide a fair estimate of it; and
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.
>
> (C) **Proceedings.** Subject to Rule 23(h), the court must, on a party's request, give an opportunity for

> adversary submissions on the motion in accordance with Rule 43(c) . . . . The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).
>
> . . .
>
> (E) **Exceptions.** Subparagraphs (A)-(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

The request made by FSCU in the Motion is not a request under Fed. R. Civ. P. 54(d)(2)(A)-(C), as it does not arise as part of a claim for damages asserted in the Contested Matter. Instead, FSCU seeks an award of attorney's fees arising from the Debtor's alleged litigation misconduct, which it characterizes as having "cross[ed] the line from vigorous prosecution of a potentially viable claim into unreasonable and vexatious multiplication of a dispute whose limited nature had been expressly identified by this Court." (Docket No. 118 at 5-6.) Thus, and despite the fact that FSCU never characterizes its request as one for "sanctions" under the applicable rules of procedure or 28 U.S.C. § 1927, the Court understands FSCU's request to be just that: a request for sanctions pursuant to Fed. R. Civ. P. 54(d)(2)(E).

In *Courtesy Inns*, one of the cases FSCU cites in the Motion, the Tenth Circuit Court of Appeals ruled bankruptcy courts "may not impose sanctions under § 1927." 40 F.3d at 1086. And FSCU does not explicitly seek sanctions under that statute. So, FSCU must be asking the Court to award fees as a "sanction[] for violating these rules."

In bankruptcy proceedings, the Rule that generally governs requests for sanctions on account of litigation misconduct is Fed. R. Bankr. P. 9011. That Rule, which is derived from Rule 11 of the Federal Rules of Civil Procedure, provides, in relevant part:

> (b) **Representations to the Court.** By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
>
> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
(3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and [.]

…

(c) **Sanctions**.

(1) **In General.** If, after notice and a reasonable opportunity to respond, the court determines that (b) has been violated, the court may, subject to the conditions in this subdivision (c), impose an appropriate sanction on any attorney, law firm, or party that committed the violation or is responsible for it.

**(2) By Motion.**

(A) **In General.** A motion for sanctions must be made separately from any other motion or request, describe the specific conduct alleged to violate (b), and be served under Rule 7004.

(B) **When to File.** The motion for sanctions must not be filed or presented to the court if the challenged document, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected within 21 days after the motion was served (or within another period as the court may order). This limitation does not apply if the conduct alleged is filing a petition in violation of (b).

(C) **Awarding Damages.** If warranted, the court may award to the prevailing party the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

Fed. R. Bankr. P. 9011(b) and (c). The provision requiring service of a sanctions motion 21 days prior to filing it with the Court is often referred to as the “safe harbor provision.”

*See Roth v. Green*, 466 F.3d 1179, 1191 (10th Cir. 2006) (interpreting earlier version of Rule 11).[4]

"This safe harbor requirement is strictly applied in federal court, such that the failure to comply with it results in rejection of a motion for sanctions." *Id.* at 1192-93. *See also Advanced Coatings Int'l, Inc. v. Johnson (In re Johnson)*, 485 B.R. 642, 649 (Bankr. D. Colo. 2013) (applying Rule 9011 and quoting *Roth*); *Bergquist v. Caskie-Johnson (In re Caskie-Johnson)*, 2007 WL 496675, at *3 (D. Colo. Feb. 13, 2007)). As the Court in *Advanced Coatings* observed:

> Strict enforcement serves the policies behind the safe harbor requirement: "(1) to protect litigants from sanctions whenever possible in order to mitigate Rule 9011's chilling effect; (2) to formalize procedural due process considerations such as notice; and (3) to encourage withdrawal of papers that violate the rule without involvement of the trial court, thereby streamlining the litigation process."

*Advanced Coatings*, 485 B.R. at 649 (quoting *Caskie-Johnson*, 2007 WL 496675 at *4). *INDVR Brands, Inc. v. Mascio*, 2025 WL 2304186, at *2-3 (Aug. 8, 2025) (same, quoting *Advanced Coatings* and *Caskie-Johnson*).

Here, FSCU has not shown that it presented the Fees Motion to the Debtor before filing it with the Court so as to afford the Debtor the opportunity to correct his alleged violation of Rule 9011(b) before it progressed; instead, it seems, FSCU waited for the Court to rule on the Contempt Motion before advising the Debtor that it believed its conduct ran afoul of the Rule.

In *Roth*, the Tenth Circuit stated, "The addition of the safe harbor provision in the 1993 amendment [to Rule 11] dramatically changed the effect that a final judgment or the dismissal of the claim has on the possibility of a Rule 11 proceeding." 466 F.3d at 1192 (citing 5A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1337.2, at 727 (3d ed.2004).). As such, the appellate court held unequivocally that "[s]ervice of a sanctions motion after the district court has dismissed the claim or entered judgment prevents giving effect to the safe harbor provision or the policies and procedural protections it provides, and it will be rejected." *Id.* (quoting WRIGHT AND MILLER, *supra*, § 1337.2, at 727).

Had FSCU timely complied with Rule 9011, the Court might well have considered an award of sanctions. Because they did not, the Court is without authority to do so. Therefore, the Court summarily denies the Fees Motion.[5]

---

4 The advisory committee note to the 2024 amendment to Rule 9011 states: "The language of Rule 9011 has been amended as part of the general restyling of the Bankruptcy Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Similar changes were made to Fed. R. Civ. P. 11 in 2007. *See* Fed. R. Civ. P. 11 advisory committee note to the 2007 amendment). As such, the Court determines that *Roth* and other pre-2007 case law interpreting Rule 9011 applies to the current version of the Rule.

5 While Rule 9011(c)(1)(B) permits a court to initiate an action to impose sanctions where it believes that a party or counsel's actions violate subdivision (b) of the Rule, the Court is disinclined to take such action where doing so would effectively skirt the safe harbor requirements in subsection

## IV. Order.

For the foregoing reasons, it is

ORDERED that the Fees Motion is DENIED.

DATED this 5th day of November, 2026.

BY THE COURT:

Thomas B. McNamara
United States Bankruptcy Judge

---

(c)(1)(A). The Court is especially disinclined to rely on its authority to initiate Rule 9011 proceedings in a case where the party complaining of the violation is represented by counsel who could have activated the Rule 9011 process at an appropriate time. Further, as discussed earlier, the Court may not rely on its inherent authority under 11 U.S.C. § 105(a) where the process for seeking an award of sanctions is clearly spelled out in Rule 9011.